Bellacosa, J.
(dissenting). I respectfully dissent in each case, and vote to affirm in People v Norman and to reverse in People v King. Both criminal actions should be dismissed.
In Norman, defendant failed to deliver logs to a purchaser who paid the price for a kit and materials to build a house in the Adirondacks. In King, defendant on Long Island failed to deliver a promised and paid-for used vehicle. Both defendants acted wrongly. However, in my view and on the respective records, their transgressions are not criminal. Instead, the cases reflect quintessentially civil transactions gone awry. Moreover, the standard of appellate review for the sufficiency issue in this unique larceny classification may engender confusion with respect to well-settled principles and protections.
Thus, I conclude that in addition to criminal prosecutions for these derelictions being counter-intuitive, defects in the statutory-policy analysis and appellate review lead to false positives concerning the satisfaction of the high hurdle set by the Legislature and this Court for the successful prosecution of such woebegone civil bargains and transactions (see, e.g., People v Luongo, 47 NY2d 418; People v Churchill, 47 NY2d 151; People v Ryan, 41 NY2d 634, 639-640; Penal Law § 155.05 [2] [d] ["a finding (of larceny by false promise) may be based only upon evidence establishing that the facts and circumstances of the case are wholly consistent with guilty intent * * * and wholly inconsistent with innocent intent * * * and excluding to a moral certainty every hypothesis except that of the defendant’s intention or belief that the promise would not be performed”]).
The history and development of the distinct varieties of larceny in criminal jurisprudence, while fascinating, are enmeshed in arcane nuance, sophistication and technicality. Nevertheless, there is something to be said for an overarching, simplified approach. These cases qualify for the simpler approach and, thus, my analysis in each case does not reach or require discussion of the fine distinctions between larceny by false promise or false pretenses and the like. Indeed, in the King case, I find that the particular record satisfies the threshold preservation prerequisite as well.
The controlling guidepost for these cases should be the recognition of the steadfast reluctance, resistance and barriers established by the Legislature and the courts against authoriz *627 ing the transmutation of civil mishaps into felonious inflations. To obscure the central demarcation, that for centuries has marked the boundary between civil and criminal matters in the myriad of ordinary commercial transactions, trivializes true criminality, diverts attention and resources away from victims of true crimes against "the People,” and engenders opportunistic manipulation of the criminal processes by unhappy civil suitors for redress of private wrongs and harms. My direct-line approach to the disposition of these two cases and others like them would accord greater respect and adherence to the important differences inherent in the distinct hemispheres of civil and criminal disputes.
Moreover, the majority is imposing for the first time a significantly switched and more forgiving standard of review in favor of the People with respect to the "moral certainty” element of larceny by false promise (Penal Law § 155.05 [2] [d]). This Court’s consistent methodology, mandated by the pertinent and unique penal statute (Penal Law § 155.05 [2] [d]), is found in People v Ryan (41 NY2d 634, 640-642, supra), People v Churchill (47 NY2d 151, 158-159, supra), People v Luongo (47 NY2d 418, 428-429, supra), and even People v Jennings (69 NY2d 103, 114), so heavily and curiously relied on by the majority for the opposite view.
In People v Ryan (41 NY2d 634, supra), this Court considered the proof for larceny by false promise and stated that "[t]he standard in the statute equates to the rule used in circumstantial evidence cases” (id., at 640). The Court added that "we must conclude that the proof has failed to exclude to a moral certainty every hypothesis except a guilty intent” (id., at 642 [emphasis added]; see also, id., at 641 [stating that "it cannot be said with any moral or reliable degree of certainty that * * * defendant did not intend to complete the transaction”]).
Similarly, in People v Churchill (47 NY2d 151, supra), this Court again applied the moral certainty standard, with no mention of the more generally applicable deferential standard of review at the appellate level. Significantly, in finding for the defendant in Churchill, this Court emphasized:
"The inferences to be drawn from this record certainly do not exclude to a moral certainty every hypothesis but that at the time he entered into the contracts defendant had no intention of meeting his obligations. Indeed, equally strong is the infer *628 ence that defendant was simply an inexperienced, uneducated tyro whose talents of salesmanship surpassed his ability to manage a business” (id., at 158).
This Court, on review, explicitly and faithfully applied the heightened statutory canon, holding that it was "impossible [for it] to conclude that the proof exclud[ed] to a moral certainty every hypothesis except guilty intent” (id., at 159).
Again, in People v Luongo (47 NY2d 418, supra), the Court reiterated the Ryan and statutory standard of proof, stating that a finding of larcenous intent "may be made only where that determination flows naturally and reasonably from the facts in evidence and must exclude to a moral certainty any implication that the defendant has committed a mere civil wrong” (People v Luongo, 47 NY2d 418, 428, supra).
Thus, as has been demonstrated, this Court has consistently used the "circumstantial evidence/moral certainty standard” as the appropriate level of scrutiny for appellate review in larceny by false promise cases (see, People v Jennings, 69 NY2d, at 114, supra; People v Luongo, 47 NY2d 418, supra; People v Churchill, 47 NY2d 151, supra; People v Ryan, 41 NY2d 634, supra). Contrary to the majority’s view, the moral certainty standard articulated by this Court for reviewing legal sufficiency of larceny by false promise convictions is not mere "verbiage” (majority opn, at 621), which can be summarily cast aside (see, People v Luongo, supra; People v Churchill, supra; People v Ryan, supra). This heightened standard of scrutiny on appellate review is compelled by the Legislature’s explicit and unique inclusion of this terminology in the very definition of the crime of larceny by false promise (see, Penal Law § 155.05 [2] [d]). Indeed, it is this statutory, definitional distinction, ignored by the majority’s analysis, that for purposes of appellate review, distinguishes the larceny by false promise line of cases from the circumstantial evidentiary-ruletype cases on which the majority relies (majority opn, at 622), where deferential appellate review is proper.
In formulating the modern, non-common-law brand of larceny by false promise provision, the Commission on Revision of the Penal Law warned "that an unqualified larceny by false promise 'might result in an avalanche of criminal prosecutions based upon conduct essentially civil in character and constituting little more than breach of contract’ ” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, *629 art 155, at 103, quoting Staff Notes of Commn on Revision of the Penal Law and Criminal Code, Proposed New York Penal Law, McKinney’s Spec Pamph, at 351-352 [1964]). To implement the ensuing, explicit legislative directive, this Court, therefore, has consistently applied the more exacting "moral certainty” standard at the appellate review phase (see, People v Churchill, supra; People v Luongo, supra; People v Ryan, supra). That careful practice and protection, strictly followed in People v Ryan, People v Churchill, and People v Luongo, cannot be undone by the majority’s bare assertion that, in these cases, "the Court frequently intermingled 'moral certainty’ verbiage with its legal sufficiency analysis” and that "moral certainty verbiage was also injected into sufficiency decisions [in other contexts]” (majority opn, at 621).
Further and notwithstanding the majority’s conclusory assertions, People v Jennings (69 NY2d 103, supra) did not depart from the approach adopted in our earlier precedents, nor did it, in my view, effect a wholesale sub silentio overruling of cases and what they stand for. To the contrary, Jennings — an indictment/Grand Jury review case — implicitly continues support for the view that traditional, deferential appellate review is not enough in the larceny-by-false-promise-trial context (see, People v Jennings, 69 NY2d 103,114, supra).
In People v Jennings, this Court considered the issue of the proper standard for reviewing the sufficiency of larceny evidence before a Grand Jury (id., at 114 [emphasis added]). In finding that the lower court had erred in dismissing the indictment after applying the higher moral certainty standard of proof of larcenous intent (id., at 114), this Court expressly distinguished the Grand Jury indictment cases:
"The cases cited to justify this heightened scrutiny, however, only addressed the question whether the circumstantial evidence of larcenous intent adduced at trial supported a petit jury’s finding that guilt was established beyond a reasonable doubt. Manifestly, such cases are not controlling on a motion to dismiss an indictment prior to trial” (People v Jennings, 69 NY2d 103, 114 [emphasis in original and added]).
Not only was the question we face today not before us in Jennings, but we explicitly limited the reach of the Jennings holding to the indictment phase of the larceny prosecution (id., at 114). Consequently, if People v Jennings (supra) is now *630 declared to have overruled the consistent, long-standing, prior approach adopted by this Court in People v Ryan (41 NY2d 634, 640-642, supra) and reaffirmed in its progeny (see, People v Churchill, 47 NY2d 151, 158, supra; People v Luongo, 47 NY2d 418, 428-429, supra), it comes as a surprise to me — and may, perhaps, to scrutinizing interpreters and observers of this Court’s works.
In sum, in my view, these cases do not meet the necessary hurdles of review and sufficiency and, in any event, do not merit prosecutorial cognizance in the criminal hemisphere.
Chief Judge Kaye and Judges Simons, Smith, Levine and Ciparick concur with Judge Titone; Judge Bellacosa dissents and votes to reverse in a separate opinion.
In People v Norman: Order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.
In People v King: Order affirmed.